IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Auto-Owners Insurance Company, | ) | C/A No. 3:20-cv-4015-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION & ORDER** |
| Michael Andrew Bank, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is an insurance contract case. Pending before the court are Defendant Michael Bank's Motion for Partial Summary Judgment, ECF No. 27, and Plaintiff Auto-Owners Insurance Company's Motion for Summary Judgment, ECF No. 28. For the reasons set forth below, the court **GRANTS** Bank's motion and **DENIES** Auto-Owners' Motion.

**BACKGROUND**

**I. Procedural History**[1]

On November 17, 2020, Auto-Owners Insurance Company ("Auto-Owners") filed this action against Defendant Michael Andrew Bank ("Bank") seeking a declaratory judgment that no coverage exists under the applicable homeowner's insurance policy for the damage identified in Bank's insurance claim. [ECF No. 1, ⁋ 24]. Less than a month later, Bank filed an Answer to Auto-Owners' Complaint and included two counterclaims alleging that Auto-Owners breached the

---

[1] In addition to the procedural history described in this section, the court recognizes the existence of a prior jurisdictional dispute. On January 27, 2022, the court denied both parties' summary judgment motions without prejudice. [ECF No. 37]. In its order denying the parties' motions the court directed the parties to brief the jurisdictional issue to determine whether the amount in controversy exceeded $75,000. *Id.* Following the court's review of the parties' Joint Brief in Support of Subject Matter Jurisdiction, ECF No. 38, the court determined that it possesses jurisdiction over the issue and reinstated the parties' motions. [ECF No. 41].

1

parties' insurance contract by not providing coverage under the homeowner's insurance policy and the denial constituted bad faith, entitling him to damages plus reasonable attorney's fees and costs. [ECF No.6, ¶¶ 15–32]. Auto-Owners answered Bank's counterclaims on January 4, 2021.

Bank filed his Motion for Partial Summary judgment on August 2, 2021. [ECF No. 27]. Auto-Owners filed its own Motion for Summary Judgment on the same day. [ECF No. 28]. Two weeks later, on August 16, 2021, the parties filed their respective Responses to the summary judgment motions. [ECF Nos. 29, 30]. Bank filed a Reply addressing Auto-Owners' Response on August 23, 2021. [ECF No. 31].

All pending motions, therefore, have been fully briefed and are ripe for consideration by this court.

## II. Relevant Undisputed Facts

On February 20, 2020, Auto-Owners issued Bank a homeowner's insurance policy, Policy No. 52-242-053-02 ("the Policy"), insuring the property located at 10 Turnberry Ct., Columbia, South Carolina 29223. [ECF No. 1, ¶ 6]; [ECF No. 1-1, p. 11]; [ECF No. 6, ¶ 2]. The Policy had effective dates of March 29, 2020 until March 29, 2021 and provided property coverage with Dwelling limits of $496,000.00. *Id.* Pursuant to the terms of the Policy, Auto-Owners covers "direct physical loss to covered property . . . ***except for losses excluded elsewhere*** in this policy." [ECF No. 1-1, p. 21 (emphasis added)].

In accordance with the enumerated exclusions, and most pertinent to this matter, the parties agreed Auto-Owners would not cover loss resulting from the following:

> (f) birds, vermin, rodents or insects;
> . . .
> (h) discharge, release, escape, seepage, migration or dispersal of **pollutants** unless caused by a peril **we** insure against under Coverage C – Personal Property. This exclusion does not apply to ADDITIONAL Coverage, o. Heating Fuel Damage.

*Id.* at p. 24.

The policy provides the following definition for pollutants:

> 10. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*Id.* at p. 17. The policy does not define vermin, nor does it provide a further definition of waste. *See generally id.* at pp. 16–18.

On August 17, 2020, Bank discovered a colony of bats had infiltrated his attic and had produced a large amount of guano (excrement) resulting in physical damage to his home. [ECF No. 27-1, p. 1]. Palmetto Wildlife Extractors ("PWE"), a company specializing in animal extraction and wildlife damage control, provided Bank an estimate for extraction of the bat colony and remediation of the home. *Id.* at pp. 1–2; *see* [ECF No. 28-2, Ludy Depo., pp. 5:13—6:3]. PWE extracted the bats and preventively sealed off the attic to ensure no further colonization. [ECF No. 28-2, Ludy Depo., p. 10:2–7]. Initially, PWE estimated the cost for its remediation services at $27,216.20. *Id.* at p. 16:9–24.

Less than two months later, on October 9, 2020, PWE prepared a second estimate for its remediation services amounting to $51,553.25. [ECF No. 27-2, pp. 3, 8]. Justin Ludy, PWE's CEO, testified that the cost of the estimate increased due to "several reasons" including the fact that once "guano dries out [it] becomes airborne [and] it travels through more areas of the house." [ECF No. 28-2, Ludy Depo., pp. 17:22—18:11]. Mr. Ludy also cited the rising costs of building materials as contributing to the almost-doubled second estimate. *Id.* at p. 18:3–11. PWE recommended the remediation of both the second and first floors and reported they would need specialized equipment such as HEPA filters to accomplish the remediation task. *Id.* at p. 20:15—21:3; *see generally* [ECF No. 27-2 4–7].

Following his consultation with PWE, Bank filed a claim with Auto-Owners on August 18, 2020, and alleged significant damage due to the bat colonization and subsequent production of

guano. [ECF No. 1, ¶ 8]; [ECF No. 6, ¶ 2]. Bank submitted the estimate prepared by PWE along with his claim. [ECF No. 1, ¶ 9]; [ECF No. 6, ¶ 2]. On September 8, 2020, Auto-Owners responded to Bank's claim by denying coverage based on its understanding that "the homeowner's policy does not provide coverage for this as bat guano is considered a pollutant under the policy." [ECF No. 27-1, p. 64]; [ECF No. 6, ¶ 5]. Following this denial, Bank filed a complaint with the South Carolina Department of Insurance on September 14, 2020. [ECF No. 27-3, p. 12]. Auto-Owners responded to this complaint three days later and reasserted its position that bat guano constitutes a pollutant under the policy and cited "a supreme court case (*Hirschhorn v. Auto-Owners Insurance Co.*)" to justify its decision. *Id.* Auto-Owners failed to specify that the Supreme Court of Wisconsin, not the Supreme Court of South Carolina, decided the referenced case.

The parties dispute whether the Policy excludes the damage caused by the bat guano. Accordingly, Auto-Owners filed its Complaint seeking a declaratory judgment to resolve the parties' dispute.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading, but rather must, by affidavits or other

4

means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp.*, 477 U.S. at 323. A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citing *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "[T]he court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (citing *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

## ANALYSIS & DISCUSSION

On these cross motions for summary judgment, the issue before the court is one of contract interpretation. The court starts by outlining South Carolina law governing contract construction. The court then turns to the language of the Policy. At issue is whether bat guano constitutes a

5

pollutant under the Policy. Auto-Owners maintains the Policy excludes damage caused by bat guano. Specifically, Auto-Owners argues the Policy excludes pollutants which, as defined in the Policy, includes waste. Thus, the argument goes: Damage caused by pollutants is excluded. Waste is a pollutant. Bat guano is a waste. Therefore, damage caused by bat guano is excluded. [ECF No. 28, pp. 4–14]; [ECF No. 1, ¶ 15]. In contrast, Bank argues the Policy's pollutant exclusion, intended to be an industrial pollution exclusion, fails to unambiguously include animal waste, and the ambiguity should be resolved in his favor. [ECF No. 27-2, pp. 7–10].

The court determines that the pollutant exclusion, because of its reference to waste, is ambiguous. As such, the court construes the provision in favor of coverage for Bank. Necessarily then, the court finds that Auto-Owners breached its contractual obligations by denying coverage of Bank's claim. Last, the court determines that Bank's bad faith claim survives Auto-Owners' summary judgment motion.[2]

### I. Contract Interpretation: Standard to Determine Ambiguity

Before reaching the Policy's language, a brief outline of the construction principles guiding the court's analysis is instructive. In South Carolina, "[i]nsurance policies are subject to the general rules of contract construction." *B.L.G. Enters., Inc. v. First Fin. Ins. Co*., 514 S.E.2d 327, 330 (S.C. 1999). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Schulmeyer v. State Farm Fire and Cas. Co*., 579 S.E.2d 132, 134 (S.C. 2003) (citing *United Dominion Realty Trust, Inc. v. Wal-Mart*

---

[2] The court notes that Bank brought two counterclaims against Auto-Owners: one alleging a breach of contract, and the other alleging Auto-Owners' denial amounted to bad faith. Bank filed only a *partial* summary judgment motion seeking judgment on his breach of contract claim. However, Auto-Owners' motion asks this court to rule in its favor on both the breach of contract claim (by declaring the Policy does not cover the damage included in Bank's insurance claim) and the bad faith claim. Accordingly, the court only needs to address whether Bank's bad faith claim survives summary judgment and not whether it prevails as a matter of law.

*Stores, Inc.*, 413 S.E.2d 866 (S.C. Ct. App. 1992)). "The meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract." *State Farm Fire and Cas. Co. v. Morningstar Consultants, Inc.*, No. 6:16-cv-01685, 2017 WL 2265919, at *2 (D.S.C. May 24, 2017) (citing *Yarborough*, 225 S.E.2d at 349).

"Policies are construed in favor of coverage, and exclusions in an insurance policy are construed against the insurer." *M&M Corp. of S.C. v. Auto-Owners Ins. Co.*, 701 S.E.2d 33, 35 (S.C. 2010) (citing *Buddin v. Nationwide Mut. Ins. Co.*, 157 S.E.2d 633, 635 (S.C. 1967)). "It is the insured's burden to establish that a claim falls within the coverage of an insurance contract," and "the insurer shoulders the burden of establishing the exclusions to coverage." *State Farm Fire & Cas. Ins. Co. v. Reed*, No. 7:07-cv-2958, 2009 WL 735133, at *4 (D.S.C. Mar. 19, 2009) (citations omitted).

An insurer's duty under a policy is "defined by the terms of the policy and cannot be enlarged by judicial construction." *South Carolina Ins. Co. v. White*, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990). "When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense." *C.A.N. Enters., Inc. v. S.C. Health & Human Servs. Fin. Comm'n*, 373 S.E.2d 584, 586 (S.C. 1988) (citing *Warner v. Weader*, 311 S.E.2d 78, 79 (S.C. 1983)). Ambiguities, in contrast, are resolved in favor of the insured. *Greenville Cnty. v. Ins. Rsrv. Fund*, 443 S.E.2d 552, 553 (S.C. 1994) ("Where the words of an insurance policy are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured." (citing *McPherson v. Mich. Mut. Ins. Co.*, 426 S.E.2d 770, 771 (S.C. 1993))). "That different courts have construed the

language of an insurance policy differently is some indication of ambiguity." *Id.* (citing *Brooklyn Bridge v. S.C. Ins. Co.*, 420 S.E.2d 511 (S.C. Ct. App. 1992), *cert. denied*.

**II. Standard Applied: Is the Pollutant Exclusion Ambiguous?**

Both parties acknowledge the absence of South Carolina case law addressing whether bat guano constitutes a pollutant in the context of a homeowner's insurance policy. Here, Auto-Owners would have the court rely on a Wisconsin Supreme Court case: *Hirschhorn v. Auto-Owners Ins. Co.*, 809 N.W.2d 529 (Wis. 2012). There, the court, addressing an identical policy exclusion to the one at issue here, interpreted pollutant to include bat guano. *Id.* at 537. The court based its holding on two facts: First, guano "is or threatens to be a solid, liquid, or gaseous irritant or contaminant" and second, "a reasonable person in the position of the insured would understand bat guano to be waste." *Id.* at 538; *see also Marcelle v. S. Fid. Ins. Co.*, 954 F. Supp. 2d 429, 439 (E.D. La. 2013) (discussing *Hirschhorn's* holding and finding the same).

Unsurprisingly, Bank directs the court to cases which conclude bat guano is not a pollutant as that term is defined in policies substantially similar to the Policy at issue here. *See Nicholson v. Allstate Ins. Co.*, 979 F. Supp. 2d 1054 (E.D. Cal. 2013). The court in *Nicholson* addressed the ruling in *Hirschhorn* and found the pollutant exclusion more logically pertained to industrial pollutants rather than animal excrement. *Id.* at 1065; *see also Molton, Allen & Williams, Inc. v. St. Paul Fire & Marine Ins. Co.*, 347 So. 2d 95, 97 (Ala. 1977). In *Molton*, the policy at issue had an exclusion for "discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, or other irritants, contaminants or pollutants." *Molton*, 347 So. 2d at 97. The Alabama Supreme Court held that the "intent of the pollution exclusion clause was to eliminate coverage for damages arising out of pollution or contamination by industry-related activities." *Id.* at 98. *See also Auto-Owners Ins. Co. v. Potter*, 105 F.App'x

8

484, 497 (4th Cir. 2004) and *Minerva Enters. v. Bituminous Gas Corp.*, 851 S.W.2d 403, 404 (Ark. 1993) (In *Potter* and *Minerva*, the respective policies defined "pollutants" exactly the same way as the Policy in this case and both courts concluded the exclusion intended to exclude traditional industrial or environmental pollutants.).

The cases cited by the parties,[3] although not binding authority, are instructive as the court turns to the language of the Policy, which provides:

> **We** cover risk of accidental direct physical loss to covered property described under Coverage A – Dwelling and Coverage B – Other Structures except for losses excluded elsewhere in this policy.

[ECF No. 1-1, p. 21].

The coverage, however, is subject to a number of enumerated exclusions. The exclusion at the heart of this dispute is the pollutant exclusion:[4]

---

[3] Auto-Owners also cites the South Carolina Pollution Control Act, a blog post written by the South Carolina Department of Health and Environmental Control ("DHEC"), and a consent order of dismissal written by an administrative law judge to bolster its position. *See* [ECF No. 28, pp. 6–7]. Even though these materials describe animal waste as a pollutant, the court finds them unpersuasive. The Act specifically defines pollutants as including sewage and specifically defines sewage as including *animal* waste. The other materials used this same definition. The Policy issued by Auto-Owners fails to unambiguously include animal waste as an excluded pollutant. Therefore, the cited material lacks persuasive authority.

[4] In its summary judgment motion Auto-Owners, for the first time, calls the vermin exclusion into question. *See* [ECF No. 28, p. 3 ("Auto-Owners denied the claim under the pollution and vermin exclusions and provided the insured with a coverage position letter on September 9, 2020.")]. The record clearly shows, however, Auto-Owners **never** denied coverage based on the vermin provision, and this represents its first assertion to the contrary. *See first* [ECF No. 1, ¶ 14 ("Auto-Owners denied the claim *under the pollution exclusion* continued [sic] in the Policy and provided the insured with a coverage position letter on September 9, 2020.") (emphasis added)], *then see* [ECF No. 27-1, pp. 64–66 ("Unfortunately, the homeowner's policy does not provide coverage for this as bat guano is considered a pollutant under the policy . . . . Therefore, based on our investigation and conclusion that bat guano ***falls within the definition of a pollutant***, we must respectfully deny coverage for your loss.") (emphasis added)], *see last* [ECF No. 27-3, p. 12 ("As Mr. Taylor referenced in his phone conversation with Mr. Bank . . . there was a supreme court case (*Hirschhorn v. Auto-Owners Insurance Co.*) in which the supreme court upheld a ruling by the circuit court that granted summary judgment in favor of Auto-Owners. The circuit court concluded that the Homeowners [sic] policy's ***pollution exclusion*** excluded Hirschhorn's loss for bat

9

> Except as to ensuing loss not otherwise excluded, **we** do not cover loss resulting directly or indirectly from:
>
> . . .
>
> (4) (h) discharge, release, escape, seepage, migration or dispersal of **pollutants** unless caused by a peril **we** insure against under Coverage C – Personal Property. This exclusion does not apply to ADDITIONAL COVERAGE, o. Heating Fuel Damage.

*Id.* at p. 24.

The Policy also defines pollutants:

> **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*Id.* at p. 17.

If this definition of pollutants did not include the word waste, the court's task would be easier, as a plain, ordinary reading of the rest of the sentence fails to lead one to naturally consider bat guano as a pollutant. But the word waste *is included*, and the parties disagree whether this definition of pollutants, and its inclusion of waste, unambiguously includes animal excrement.

A common-sense understanding of "waste" includes excrement, including animal excrement. *See* Merriam-Webster (2022) (Waste: "refuse from places of human or ***animal habitation***: such as (1): garbage, rubbish (2): ***Excrement***—often used in plural (3): sewage) (emphasis added). Even if the court concedes Bank's argument that this definition does not constitute the plain and ordinary meaning of the term, it cannot ignore the fact that excrement can constitute waste in certain situations. *See* [ECF No. 27-3, p. 10 ("The [eighth] of [nine] alternate definitions of waste (noun) is **not** the plain and ordinary meaning of the term.")].

---

guano.") (emphasis added)]. Auto-Owners consistently and clearly denied coverage based on the pollutant exclusion, and the court will not consider the vermin exclusion. Nonetheless, even if the court considered that exclusion, it would conclude, just like the Eastern District of Louisiana in *Marcelle*, vermin is ambiguous as to whether it includes bats, and as such, construe it in favor of coverage for Bank. *See Marcelle*, 954 F. Supp. 2d at 436–37 (finding the word vermin ambiguous and construing in favor of coverage for the insured).

10

South Carolina law instructs the court to read the Policy's definition of waste in its "plain, ordinary and popular sense." *See C.A.N. Enters., Inc.*, 373 S.E.2d at 586. However, South Carolina law also directs the court to read the Policy in its entirety and not just this isolated portion in a vacuum. *See Farr v. Duke Power Co.*, 218 S.E.2d 431, 433 (S.C. 1975) (citing *Bolt v. Ligon*, 144 S.C. 142 S.E. 504 (S.C. 1928)). Once the court reads the definition of waste in context with the rest of the Policy, the term is susceptible to a different interpretation than excrement.

First, the definition of pollutants naturally bears on the interpretation of waste. The Policy defines pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant." [ECF No. 1-1, p. 17]. Auto-Owners argues other courts have found that bat guano constitutes both an irritant and a contaminant. *See Hirschhorn v. Auto-Owners Ins. Co.*, 809 N.W.2d 529, 537 (Wis. 2012) ("Bat guano, composed of bat feces and urine, is or threatens to be a solid, liquid, or gaseous irritant or contaminant."); *see also Marcelle v. S. Fid. Ins. Co.*, 954 F. Supp. 2d 429, 439 (E.D. La. 2013) (discussing *Hirschhorn's* holding and finding the same).

However, Bank argues that the definition of pollutants must be considered in its proper context. The Policy provides that pollutants include "smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste." [ECF No. 1-1, p. 17]. Bank points to other courts that have found this list (or one substantially similar) refers to prototypical environmental harms resulting from manufacturing or industrial pollution. *See Auto-Owners Ins. Co. v. Potter*, 105 F. App'x 484, 496 (4th Cir. 2004) (describing an identical definition of pollutants as descriptive of "the prototypical environmental harms that a pollution exclusion clause is generally intended to protect against— *e.g.*, a traditional response scenario where the insured is remediating a spill or toxic release[.]");[5]

---

[5] Auto-Owners attempts to distinguish *Potter* in its Response. *See* [ECF No. 30, p. 4]. Auto-Owners suggests that because the decision was not selected for publishing, the Fourth Circuit interpreted the policy provision under North Carolina law, and the Fourth Circuit ultimately did

11

*see also Nicholson v. Allstate Ins. Co.*, 979 F. Supp. 2d 1054, 1065 (E.D. Cal. 2013) (finding that a similar exclusion "is indicative of [the insurer's] intention that the language of [the exclusion] apply to environmental pollutants" and not "to any sort of mammal excrement"). Bank's argument is persuasive, especially in light of the second sentence under the pollutant definition. The second sentence defines waste: "Waste includes materials to be recycled, reconditioned or reclaimed." [ECF No. 1-1, p. 17]. This definition of waste, like other terms listed in the definition of pollutants, arguably pertains only to industrial or environmental pollution.

Finally, as the court continues to consider the Policy in its entirety, as the court is bound to do, mention must be made that the Policy addresses exclusions for damages caused by animals in provisions separate from the provision addressing pollutants. The Policy specifically bars coverage for damage caused by "birds, vermin, rodents or insects." *Id.* at p. 24. An additional provision also excludes coverage for damage caused by "animals owned or kept by any insured." *Id.* And not to belabor the obvious, but we are dealing with damage caused by an animal here. Yet Auto-Owners resorts to the section on pollutants to argue coverage is excluded. This court agrees with *Nicholson*. The existence of two exclusions specifically covering damage caused by animals creates doubt regarding whether the pollutant exclusion was intended to cover animal waste. *See Nicholson*, 979 F. Supp. 2d at 1067. While the existence of these animal provisions is not dispositive on the interpretive issue, it further adds to the ambiguity of the terms pollutant and waste.

Because waste can reasonably be read in multiple ways under the Policy, and the Policy contains exclusions unrelated to pollutants, but specifically related to animals, the court concludes

---

not pass judgment on the scope of the exclusion, this court should not consider its determination. The court finds this distinction unpersuasive. Auto-Owners issued the policy at question in *Potter*, and it contained a pollution exclusion identical to the one included in the Policy at issue in this matter. Further, this court must follow Fourth Circuit precedent faithfully, and even though this unpublished opinion lacks binding authority, the court finds it persuasive.

Auto-Owners failed to meet its burden of establishing the pollutants exclusion unambiguously includes bat guano.[6] *See Boggs*, 252 S.E.2d at 568. As a result, and in accordance with South Carolina law, the court must construe the Policy's ambiguity in favor of Bank. *See Greenville Cnty.*, 443 S.E.2d at 553. Accordingly, the court finds as a matter of law the Policy does not exclude damage caused by the presence of bat guano and **DENIES** Auto-Owners' summary judgment motion to the extent it requests this court declare the policy bars coverage of Bank's claim.

### III. Auto-Owners Breached the Parties' Contract by Not Providing Coverage

Having determined the Policy fails to exclude coverage of damage caused by bat guano, the court turns to whether Auto-Owners' denial of coverage constituted a breach of contract.

To successfully bring a breach of contract claim under South Carolina law, Bank must show "the existence of a contract, its breach, and damages caused by such breach." *Hotel and Motel Holdings, LLC v. BJC Enters., LLC*, 780 S.E.2d 263, 272 (S.C. Ct. App. 2015) (quoting *S. Glass & Plastics Co. v. Kemper*, 732 S.E.2d 205, 209 (S.C. Ct. App. 2012)). Generally, a breaching party "is liable for whatever damages follow as a natural consequence and a proximate result of such breach." *Hotel and Motel Holdings, LLC*, 780 S.E.2d at 272 (quoting *Kemper*, 732 S.E.2d at 209). "[D]amages serve to place the nonbreaching party in the position he would have enjoyed had the contract been performed." *Branche Builders, Inc. v. Coggins*, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009) (quoting *S.C. Fed. Sav. Bank v. Thornton-Crosby Dev. Co.*, 399 S.E.2d 8, 10 (S.C. Ct. App. 1990)).

---

[6] The fact that courts from other jurisdictions have come to differing conclusions supports this finding of ambiguity. *See Greenville Cnty.*, 443 S.E.2d at 553 ("That different courts have construed the language of an insurance policy differently is some indication of ambiguity." (citing *Brooklyn Bridge v. S.C. Ins. Co.*, 420 S.E.2d 511 (S.C. Ct. App. 1992))).

Both parties acknowledge the existence and validity of the contract at issue in this matter. *See* [ECF No. 1-1]; [ECF No. 27-1, pp. 4–63]. Further, the parties do not dispute that the damages requested in this claim amount to $49,053—the cost of remediation as estimated by PWE ($51,553) minus the applicable deductible ($2,500). *See* [ECF No. 27-2, p. 8 (PWE's estimate)]; *see also* [ECF No. 1-1, p. 11]. Only one element remains: a breach. And, as outlined in the preceding section, the court resolved the Policy's ambiguity in favor of the insured as a matter of law.

The Policy covers the property located at 10 Turnberry Court, Columbia, SC. [ECF No. 1-1, p. 11]. Bank testified that he owns the home located at 10 Turnberry Court. [ECF No. 27-1, p. 1, ¶ 2]. The Policy provides that Auto-Owners "cover[s] risk of accidental direct physical loss to covered property . . . except for losses excluded elsewhere in this policy." [ECF No. 1-1, p. 21].

The Policy does not exclude property damage caused by bat guano. Therefore, the Policy obligates Auto-Owners to cover the accidental direct physical damage caused by the bat guano, and Auto-Owners' denial of coverage constitutes a breach of its obligations under the contract. Accordingly, the court **GRANTS** Bank's Partial Motion for Summary Judgment, ECF No. 27, and **DENIES** Auto-Owners' summary judgment motion to the extent it requests this court to dismiss Bank's breach of contract claim.

## III. Bank's Bad Faith Claim Survives Auto-Owners' Summary Judgment Motion

All that remains for the court to determine is whether Bank's bad faith claim survives Auto-Owners' summary judgment motion. The court finds that it does.

In South Carolina, "[e]very contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will injure the right of the other to receive the benefits of

the agreement." *Founders Ins. Co. v. Richard Ruth's Bar & Grill LLC*, No. 2:13-cv-03035-DCN, 2016 WL 3219538, at *5 (D.S.C. June 8, 2016) (citing *Shiftlet v. Allstate Ins. Co.*, 451 F. Supp. 2d 763, 771–72 (D.S.C. 2006)). This duty of good faith and fair dealing "extends not just to the payment of a legitimate claim, but also to the manner in which it is processed." *Mixson, Inc. v. Am. Loyalty Ins. Co.*, 562 S.E.2d 659, 662 (S.C. Ct. App. 2002) (citing *Tadlock Painting Co. v. Maryland Cas. Co.*, 473 S.E.2d 52 (S.C. 1996)).

To survive Auto-Owners' request for summary judgment, Bank must provide evidence sufficient to create a triable issue of fact with respect to the following four elements:

> (1) The existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured.

*Howard v. State Farm Mut. Auto. Ins. Co.*, 450 S.E.2d 582, 586 (S.C. 1994) (citing *Crossley v. State Farm Mut. Auto. Ins.*, 415 S.E.2d 393, 397 (S.C. 1992)).

South Carolina law provides that "[g]enerally, if there is a reasonable ground for contesting a claim, there is no bad faith denial of it." *Mixson*, 562 S.E.2d at 661–62 (citing *Cock-N-Bull Steak House, Inc. v. Generali Ins. Co.*, 466 S.E.2d 727, 730 (S.C. 1996)). "Whether such an objectively reasonable basis for denial exists depends on the circumstances existing at the time of the denial." *State Farm Fire and Cas. Co. v. Barton*, 897 F.2d 729, 731 (4th Cir. 1990) (citing *Varnadore v. Nationwide Mut. Ins. Co.*, 345 S.E.2d 711, 713–14 (S.C. 1986)). Therefore, "when conflicting evidence has been presented, [summary judgment] is generally inappropriate, and the issue of bad faith should be decided by [a] jury." *Id.* (citing *Nichols v. State Farm Mut. Auto. Ins. Co.*, 306 S.E.2d 616, 619 (1983) (superseded by statute on other grounds)). And even though an insurer

15

"should be able to litigate novel issues without fear of being accused of acting in bad faith," such novel circumstances do not always insulate insurers "from liability . . . merely because there is no clear precedent resolving a coverage issue raised under the particular facts of the case." *Mixson, Inc.*, 562 S.E.2d at 661–62 (citing *Nelson v. United Fire Ins. Co.*, 267 S.E.2d 604 (S.C. 1980)).

The parties contest only whether Auto-Owners' denial of coverage constitutes unreasonable action. Auto-Owners argues that the existence of *Hirschhorn* and *Marcelle* provides a reasonable basis for its denial of coverage which, in turn, proves fatal to Bank's bad faith claim. [ECF No. 28, pp. 14–15]. Bank argues that Auto-Owners' reading of the pollutants provision, its misplaced reliance on the Wisconsin Supreme Court case, and its inadequate investigation render its denial of coverage unreasonable. [ECF No. 29, pp. 13–14].

Indeed, Auto-Owners' denial of coverage letter provides a sparse basis for its decision other than its conclusory statement: "the homeowner's policy does not provide coverage for this as bat guano is considered a pollutant under the policy." [ECF No. 27-1, p. 64]. Auto-Owners did not provide a detailed justification for this decision until it responded to the South Carolina Department of Insurance's inquiry regarding Bank's administrative complaint. [ECF No. 27-3, pp. 12–13]. Auto-Owners asserted that a "supreme court case (*Hirschhorn v. Auto-Owners Insurance Co.*)" supported its determination. [ECF No. 27-3, p. 12]. However, as Bank points out, Auto-Owners failed to specify the *Wisconsin* Supreme Court authored this decision and not the South Carolina Supreme Court. *Id.* at p. 4. Further, the record suggests that Auto-Owners failed to recognize contrary precedent (*Nicholson*) until the present litigation.

The court concludes, in a light most favorable to Bank, the nonmoving party, a question of fact exists pertaining to the reasonableness of Auto-Owners' denial of coverage. A reasonable trier of

16

fact could find evidence suggesting unreasonable action. Accordingly, the court **DENIES** Auto-Owners' summary judgment motion to the extent it requests this court find Bank's bad faith claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the court **GRANTS** Bank's Motion for Partial Summary Judgment, ECF No. 27, and **DENIES** Auto-Owners' Motion for Summary Judgment, ECF No. 28, in its entirety. Bank's bad faith claim is allowed to proceed. The Clerk of Court is **DIRECTED** to enter **JUDGMENT** accordingly.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

August 29, 2022
Columbia, South Carolina